# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 22-CV-60466-COHN/STRAUSS

**HAIDY IVONN ELSHATER,**

     Plaintiff,

v.

**KILOLO KIJAKAZI,**
Acting Commissioner of Social Security,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court upon Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") [DE 15] and Defendant's Cross Motion for Summary Judgment ("Defendant's Motion") [DE 21]. This case has been referred to me for appropriate disposition or Report and Recommendation of all pretrial matters [DE 4]. I have reviewed both motions, the administrative record [DE 11], and all other filings in this case. For the reasons discussed herein, I respectfully **RECOMMEND** that Plaintiff's Motion [DE 15] be **DENIED** and that Defendant's Motion [DE 21] be **GRANTED**.

## I.       BACKGROUND & PROCEDURAL HISTORY

Plaintiff applied for disability insurance benefits on August 18, 2020, alleging a disability onset date of October 12, 2019 ("Alleged Onset Date"). Tr. 15, 109, 126-27, 231-33. Plaintiff, who was born in 1974, was 45 years old on the Alleged Onset Date. Her claim for benefits was denied initially and upon reconsideration. Tr. 109, 126-27. Thereafter, Plaintiff appeared with counsel at a telephonic hearing before an Administrative Law Judge ("ALJ") on July 9, 2021; a vocational expert ("VE") also appeared and testified at the hearing. Tr. 46-81. On September 2,

2021, the ALJ issued her decision, finding that Plaintiff was not disabled under the Social Security Act (from the Alleged Onset Date through the date of the ALJ's decision). Tr. 15-41. On January 5, 2022, the Appeals Council denied Plaintiff's request for review, thereby leaving the ALJ's decision as the final decision of the Commissioner. Tr. 1-3. Consequently, on March 1, 2022, Plaintiff filed this action seeking judicial review of the Commissioner's decision.

## II.  STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, a court's role is limited. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's findings of fact must be affirmed if they are based upon "substantial evidence." *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "Substantial evidence is . . . such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). It "is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). Courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." *Id.* (quoting *Phillips*, 357 F.3d at 1240 n.8); *Bloodsworth*, 703 F.2d at 1239. In addition to determining whether the Commissioner's factual findings are supported by substantial evidence, courts must determine whether the ALJ applied the correct legal standards. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

### III.   DISCUSSION

#### A.  The Sequential Evaluation

A "disability" is defined as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  In making a disability determination, "the ALJ must consider the evidence in its entirety, including: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant . . . and (4) the claimant's age, education, and work history." *Maffia v. Comm'r of Soc. Sec.*, 291 F. App'x 261, 262-63 (11th Cir. 2008) (quoting *DePaepe v. Richardson,* 464 F.2d 92, 94 (5th Cir.1972)); *see also Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982).

To arrive at a determination as to disability, the ALJ must undertake the sequential evaluation embodied in 20 C.F.R. § 404.1520.  This process requires that the ALJ first determine whether the claimant is presently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(b). If so, a finding of "no disability" is made.

If the claimant is not engaged in such work, then the ALJ must proceed to the second step and determine whether the claimant suffers from a "severe impairment."  An impairment is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c).  If no severe impairment is found, then the ALJ will conclude that there is no disability; if a severe impairment is found, then the ALJ will proceed to the next step of the analysis.  *See id.*

The third step requires the ALJ to determine whether the claimant's impairment meets or equals those listed in Appendix 1 of the Regulations.  20 C.F.R. § 404.1520(d).  If so, the ALJ will

find the claimant disabled without considering age, education, and work experience.  *Id.*  If not, the inquiry will proceed to the next stage.

Step four requires the ALJ to determine whether the claimant has the residual functional capacity ("RFC") to perform past relevant work.  20 C.F.R. § 404.1520(e).  The Regulations define RFC as "the most you can still do despite your limitations."  20 C.F.R. § 404.1545(a)(1).  This determination takes into account "all of the relevant medical and other evidence," including the claimant's own testimony and the observations of others.  20 C.F.R. § 404.1545(a)(3).  The ALJ must then compare the RFC with the physical and mental demands of the claimant's past relevant work to determine whether the claimant is still capable of performing that kind of work.  If so, the claimant is found not disabled.  20 C.F.R. § 404.1520(f).

If the claimant establishes an inability to return to past relevant work, the inquiry turns to step five.  "At step five the burden of going forward shifts to the [Commissioner] 'to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.'"  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).  If the Commissioner points to possible alternative employment, then the burden returns to the claimant to prove an inability to perform those jobs.  *Id.*  At this fifth and final step, the ALJ must resolve whether the claimant is actually capable of performing other work.  *See* 20 C.F.R. §§ 404.1520(g), 404.1560(c).

To help evaluate whether sufficient jobs exist that can be performed given the claimant's age, education, and physical limitations, the Commissioner has promulgated Medical Vocational Guidelines.  *See* 20 C.F.R. § 404, subpt. P, app. 2.  The guidelines may apply "where a person is not doing substantial gainful activity and is prevented by a severe medically determinable impairment from doing vocationally relevant past work."  20 C.F.R. § 404.1569.  The guidelines

are composed of detailed grids and rules, which direct a finding of disabled or not disabled based on a claimant's RFC, age, education, and previous work experience.  *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987).

Yet, the guidelines "do not cover all possible variations of factors" and are inapplicable "if one of the findings of fact about the person's vocational factors and [RFC] is not the same as the corresponding criterion of a rule."  20 C.F.R. § 404.1569.  Therefore, "[e]xclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills."  *Phillips*, 357 F.3d at 1242 (citation omitted).  *See also Walker*, 826 F.2d at 1002-03; *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir. 1991). Nevertheless, in such situations, the guidelines may serve as a framework to determine whether sufficient jobs exist within a claimant's range of RFC.  *Hargis*, 945 F.2d at 1490.  However, the Commissioner may carry his or her burden through the use of a VE when exclusive reliance on the guidelines is not appropriate.  *Chaney-Everett v. Astrue*, 839 F. Supp. 2d 1291, 1299 (S.D. Fla. 2012) (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *Walker*, 826 F.2d at 1003).  A VE provides the ALJ with a realistic appraisal of the work that a claimant is capable of performing. *Id.* (citing *Walker*, 889 F.2d at 50).

B.  **ALJ'S Application of the Sequential Evaluation**

After considering the evidence, the ALJ found that Plaintiff was not disabled between the Alleged Onset Date and the date of the ALJ's decision.  Tr. 40.  Initially, the ALJ addressed certain preliminary issues and outlined in detail the five steps of the sequential evaluation.  Tr. 15-17. Then, addressing the first step in the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the Alleged Onset Date.  Tr. 17.  Next, at step two,

the ALJ found that Plaintiff had the severe combination of impairments of "Degenerative Change of the Right Shoulder and a Full Thickness Tear in the Right Shoulder and a Severe Combination of Spondylosis of the Lumbar Spine, a Vertebral Hemangiomata of the Cervical Spine without significant degenerative change, and Migraines." Tr. 17-18.  The ALJ also discussed nonsevere impairments at step two, including Plaintiff's mental impairments, which the ALJ found were nonsevere. Tr. 18-21.  As to Plaintiff's mental impairments, the ALJ found (at step two) that "[Plaintiff's] medically determinable mental impairments of anxiety, depression, posttraumatic stress disorder (PTSD), and cluster B traits considered singly and in combination, do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and are therefore nonsevere." Tr. 19.  The ALJ noted that she considered the "paragraph B" criteria – the four broad areas of mental functioning – in making the foregoing finding. Tr. 19.  She assessed "mild" limitations for all four of the "paragraph B" criteria. Tr. 19-21.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 21-24.

The ALJ next assessed Plaintiff's RFC, determining based on her consideration of the entire record that Plaintiff has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) with nonexertional limitations as specified herein. Thus, while the claimant can lift/carry 20 pounds occasionally and 10 pounds frequently, sit 6 out of 8 hours in a workday, stand/walk 6 out of 8 hours in a workday, and unlimitedly push/pull, the claimant requires nonexertional limitations to frequently climb ramps/stairs, occasionally climb ladders/ropes/scaffolds, and occasionally tolerate exposure to loud noise. However, the claimant's ability to tolerate moderate, quiet, or very quiet noise is unlimited. The claimant is also limited to rare—defined in this decision to mean no more than occasional—exposure to unprotected heights and dangerous moving machinery.

Tr. 24-25.  As part of this assessment, the ALJ noted that she considered all of Plaintiff's symptoms and the extent to which her symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence.  Tr. 25.  Additionally, the ALJ stated that she considered the medical opinion evidence and prior administrative medical findings in accordance with 20 C.F.R. § 404.1520c.  Tr. 25.  She then provided a very thorough discussion of the evidence of record in conjunction with discussing Plaintiff's RFC.  Tr. 25-37.

After assessing Plaintiff's RFC, the ALJ found that Plaintiff is capable of performing her past relevant work as a federal investigator, finance technician, immigration inspector, and surveillance system monitor.  Tr. 37-39.  Although the ALJ effectively found Plaintiff was not disabled at step four, the ALJ made alternative step five findings.  Tr. 39-40.  Specifically, relying on the VE's testimony, and taking into account Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff is capable of making a successful adjustment to other work existing in significant numbers in the national economy – in other words, the ALJ found that Plaintiff was capable of performing such work in addition to Plaintiff's past relevant work.  Tr. 39-40.  Therefore, the ALJ concluded that Plaintiff was not disabled.  Tr. 40-41.

## C. **Analysis**

Plaintiff raises two issues.  First, Plaintiff contends that the ALJ erred at step three.  Second, Plaintiff contends that the ALJ erred in evaluating the opinion of Luis Bencomo, M.D., Plaintiff's psychiatrist.  Because Plaintiff's argument regarding the first issue relies on the ALJ's consideration of Dr. Bencomo's opinion (at least in part), I address the second issue first.  At any rate, as discussed herein, both arguments fail.

### 1. **Dr. Bencomo's Opinion**

Plaintiff has failed to establish error with respect to the ALJ's consideration of Dr. Bencomo's opinion.  Because Plaintiff's claim was filed after March 27, 2017, the ALJ was required to consider the medical opinion evidence and prior administrative medical findings in Plaintiff's case in accordance with 20 C.F.R. § 404.1520c.  Under this regulation, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)."  20 C.F.R. § 404.1520c(a); *see also Planas on behalf of A.P. v. Comm'r of Soc. Sec.*, 842 F. App'x 495, 498 (11th Cir. 2021) (noting that the requirement to assign weight to medical opinions has been omitted from the revised regulation). Rather, the ALJ must evaluate the persuasiveness of medical opinions and prior administrative medical findings based upon five factors: "(1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) 'other factors that tend to support or contradict' the opinion" or finding.  *Walker v. Soc. Sec. Admin., Comm'r*, No. 21-12732, 2022 WL 1022730, at *2 (11th Cir. Apr. 5, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)-(5)).  Supportability and consistency are the most important factors.  20 C.F.R. § 404.1520c(a).  Although an ALJ is no longer required to provide a specific weight to medical opinions – a requirement under the prior regulation, *see* 20 C.F.R. § 404.1527 – the ALJ still needs to articulate how persuasive the ALJ finds medical opinions and prior administrative medical findings to be.  20 C.F.R. § 404.1520c(b).

Nonetheless, § 404.1520c makes clear that in doing so, an ALJ is "not required to articulate how [the ALJ] considered each medical opinion or prior administrative medical finding from one medical source individually."  20 C.F.R. § 404.1520c(b)(1).  In other words, if a single source offers multiple medical opinions or multiple administrative medical findings, an ALJ only needs to collectively address the source's opinions or findings in a single analysis rather than including

a separate analysis for each opinion or finding.  20 C.F.R. § 404.1520c(b)(1).  In doing so, the ALJ must explain how he or she considered the factors of supportability and consistency, but the ALJ is generally not required to explain how he or she considered the other three factors.  20 C.F.R. § 404.1520c(b)(2)-(3).  Under the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1).  Under the consistency factor, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(2).

Here, Dr. Bencomo provided two largely similar opinions (using the same form) in April and May 2021.  Tr. 2142-44, 2146-48.  The ALJ summarized the first opinion as follows:

> [Dr. Bencomo opined that Plaintiff] had marked restriction of activities of daily living; marked difficulty maintaining social functioning; deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner in a work setting or elsewhere; and repeated episodes of deterioration or decompensation in work or work like settings which caused [Plaintiff] to withdraw from the situation or experience exacerbation of signs and symptoms (which could include deterioration of adaptive functioning) (9F). As to other more specific work limitations related to psychiatric state, he indicated that her limitations were up to markedly impaired. However, he indicated that she did not have a complete inability to function independently outside the areas of her home due to panic attacks.

Tr. 36.  With respect to the second opinion, the ALJ noted that Dr. Bencomo assessed similar limitations but that he assessed only a moderate restriction for activities of daily living (as opposed to the marked restriction assessed the prior month).  Tr. 36.  Additionally, the ALJ noted that, in the second opinion, Dr. Bencomo "emphasized PTSD affected social and occupational

functioning." Tr. 36. In other words, while Dr. Bencomo checked boxes and circled items in both opinions, he left the comments section blank in the first opinion but added a brief comment to the second opinion stating, "[p]atient is diagnosed with PTSD which affects social and occupational function." Tr. 2144, 2148. No other comments were included.

After summarizing Dr. Bencomo's opinions, the ALJ found they were "not persuasive." The ALJ explained:

> They are not well supported by detailed explanation. Despite endorsing the presence of various signs and symptoms, Dr. Bencomo actually appeared to rely heavily on allegations alone rather than balancing them against objective medical evidence and other considerations. This detracted from supportability. Further, the wider record showed that after a voluntary hospitalization from May 8 to 14, in 2019 for stabilization—prior to the relevant period—she had some improvement and further improvement in a residential program through November 26, 2019 (3F/75, 82-83; 4F/88, 90-95; 7F/79). Thus, she was medication compliant and psychiatrically and emotionally stable (3F/82).

> On November 27, 2019, she did endorse suicidal ideation and a plan to shoot herself; she indicated she had been having increasing anxiety and depression for the last several months largely related to perceived discrimination at her job for the past two years (4F/82, 91). She requested a higher level of care than outpatient she had been receiving. She agreed to a voluntary admission. She denied suicidal and homicidal thoughts, ideation, or plan throughout the admission (4F/92). She had significant improvement in symptoms and no unsafe behaviors. She was compliant with medication and ward activities and reported significant improvement in symptoms. Prior to discharge, the claimant adamantly denied suicidal thoughts, intent, plan and discharged back home with plans for outpatient follow-up. At discharge, she had at least fair insight, judgment, concentration and otherwise normal/intact/average findings (4F/85-86. 93-94). Since then, as explained above, she has had good improvement with medication and treatment with stable, baseline mental functioning; despite report of persistent and sometimes increased symptoms, mental status findings were well preserved, as explained above, and she had no further need for hospitalizations or lengthy inpatient stays or rehabilitation (2F/135, 179-183; 3F/42; 7F/257; 8F/48-50, 65, 75-84, 92-101, 115, 128-129; 11F/33-42). Thus, there was good and sustained improvement since early in the relevant period that is not consistent with the higher level of limitation described by Dr. Bencomo. Accordingly, Dr. Bencomo's medical opinion is not persuasive as it is too limiting based on objective evidence from his treatment visits and the record as a whole during the relevant period showing early improvement with baseline, stable well preserved mental functioning suggestive of only nonsevere mental impairments with no functional limitations.

10

Tr. 36-37.

Plaintiff, however, contends that "the ALJ failed to properly assess the supportability and consistency of" Dr. Bencomo's opinion.  [DE 15] at 7.  According to Plaintiff, "[w]hile the ALJ arguably discussed, albeit superficially, the supportability of Dr. Bencomo's opinion against the findings in his own treatment records, the ALJ made no effort to discuss the consistency of Dr. Bencomo's opinion." *Id.* at 12.  The ALJ's written decision reflects otherwise.  As an initial matter, the ALJ identified the correct regulation (20 C.F.R. § 404.1520c), and *more importantly*, included an analysis that was consistent with the requirements of that regulation in that the ALJ's analysis addressed persuasiveness, supportability, and consistency.  *Cf. Planas*, 842 F. App'x at 497-98 ("For starters, the ALJ applied the correct regulatory standard in evaluating the medical opinion evidence. The ALJ not only cited the proper regulation, but also articulated her analysis in a manner wholly consistent with the applicable regulation.").  Further, the ALJ's supportability and consistency findings are based on substantial evidence.

First, there is nothing superficial about the ALJ's discussion of supportability.  As indicated above, the supportability of Dr. Bencomo's opinion turns on whether he provided relevant objective medical evidence and supporting explanations to support his opinion.  20 C.F.R. § 404.1520c(c)(1).  Significantly, immediately after the ALJ first indicated that Dr. Bencomo's opinions were not persuasive, the ALJ explained that the opinions were "not well supported by detailed explanation." Tr. 36.  That observation, which goes directly to supportability, is plainly evident from Dr. Bencomo's opinions.  As noted above, Dr. Bencomo provided no comments in the comments section of his April 2021 (Tr. 2144) opinion and only a single brief comment in the comments section of his May 2021 opinion (Tr. 2148).  Even if it would have been reasonable for the ALJ to nevertheless find that Dr. Bencomo's opinions were supported for other reasons, it was

not unreasonable for her to discount the persuasiveness of his opinions based on the lack of explanation (especially when, as discussed further below, the ALJ found that other evidence in the record was inconsistent with Dr. Bencomo's opinions).  Moreover, the ALJ provided a lengthy rationale beyond noting at the outset that Dr. Bencomo failed to provide a detailed explanation for his opinions.  *See* Tr. 36-37.[1]  Further, that rationale cited to several exhibits in the record, including records from Dr. Bencomo.[2]

Second, contrary to Plaintiff's contention that the ALJ failed to discuss consistency, the ALJ plainly did.  After discussing various records from Dr. Bencomo and other sources, the ALJ explicitly found that "there was good and sustained improvement since early in the relevant period that is not consistent with the higher level of limitation described by Dr. Bencomo." Tr. 37.  The ALJ's summary of the records from other sources makes clear that the ALJ considered the consistency of such records against Dr. Bencomo's opinion before making her consistency finding. *See* Tr. 33-37; *see also* 20 C.F.R. § 404.1520c(c)(2) (noting that consistency turns on whether an opinion is consistent with evidence from other medical and nonmedical sources).  Notably, Plaintiff fails to show (or argue) that the ALJ's finding regarding "good and sustained improvement" is not supported by substantial evidence.

---

[1] Plaintiff also takes issue with the ALJ's observation that Dr. Bencomo appeared to rely on Plaintiff's allegations alone instead of balancing them against the objective medical evidence.  But Plaintiff fails to point to objective medical evidence supporting Dr. Bencomo's opinion.  Instead, Plaintiff argues that the ALJ's observation was "pure conjecture" without making any attempt to explain why the ALJ's observation was not based on substantial evidence.

[2] Plaintiff argues that a reader would not know how Dr. Bencomo reached his conclusions "because the ALJ did not discuss any of the 'medical evidence and supporting explanations' underlying Dr. Bencomo's opinion." [DE 15] at 13.  Plaintiff also argues that "the ALJ was required to evaluate what Dr. Bencomo said he had based his opinion on." *Id.*  These arguments miss the mark.  The ALJ did not discuss Dr. Bencomo's supporting explanations *because Dr. Bencomo did not provide supporting explanations*.  That is one of several reasons the ALJ properly found Dr. Bencomo's opinion to not be supported.

Moreover, prior to the ALJ's discussion of Dr. Bencomo's opinion, the ALJ evaluated the other opinion evidence and the prior administrative medical findings. For instance, in discussing the findings of the state agency psychological consultants, the ALJ discussed records from several sources and found – like she did when discussing Dr. Bencomo's opinion – that "there was good and sustained improvement since early in the relevant period that is consistent with only nonsevere mental impairments that did not cause more than minimal limitation to ability to perform basic work activities for at least 12 months." Tr. 33-34. Thus, not only did the ALJ expressly address consistency in discussing Dr. Bencomo's opinion, but the ALJ's entire discussion of the opinion evidence leading up to her discussion of Dr. Bencomo's opinion illustrates that the ALJ considered the consistency of Dr. Bencomo's opinion with the other opinion evidence and the consistency of all of the opinion evidence with the other evidence of record. *See* Tr. 33-37.[3]

In arguing that the ALJ erred in evaluating Dr. Bencomo's opinion, Plaintiff appears to emphasize that Dr. Bencomo was Plaintiff's treating psychiatrist. While his status as a treating psychiatrist would have been significant under the regulation that applied prior to March 27, 2017, the treating physician rule, which generally mandated substantial deference to treating physician opinions, is not a part of the regulation that applies in this case. As the Eleventh Circuit recognized in a binding opinion issued on June 27, 2022:

---

[3] Plaintiff nonetheless argues that even if the ALJ properly discounted Dr. Bencomo's opinion, one would "still expect to see corresponding mental limitations in the ALJ's RFC finding." [DE 15] at 14. However, as the ALJ made clear in her decision, in conjunction with discussing opinion evidence and the consistency of opinion evidence with other evidence of record, that "the wider record was consistent with only nonsevere mental impairments that were consistent with *no functional limitations due to mental impairments*." Tr. 34 (emphasis added). While this obviously conflicts with Dr. Bencomo's opinion – which the ALJ reasonably found to be unsupported – Plaintiff has failed to demonstrate that the ALJ's determination is not supported by substantial evidence. And it evidently is supported by far more than a scintilla of evidence, which the ALJ discussed at length in her very thorough decision.

> The new regulation, 20 C.F.R. § 404.1520c (2017), abrogated the "treating-physician rule" first developed by this and other courts of appeals. The treating-physician rule instructed administrative law judges to defer to the medical opinions of treating physicians in the determination of whether an individual is disabled under the Social Security Act. The new regulation instructs administrative law judges to give a treating physician's opinion no deference and instead to weigh medical opinions based on their persuasiveness.

*Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 894 (11th Cir. 2022).[4]  Moreover, "[b]ecause section 404.1520c falls within the scope of the Commissioner's authority and was not arbitrary and capricious," the Eleventh Circuit found that it "abrogates our earlier precedents applying the treating-physician rule." *Harner*, 38 F.4th at 896.[5]  Thus, Dr. Bencomo's opinion is not entitled to deference over and above the opinions or prior administrative medical findings of others by virtue of his status as a treating psychiatrist.

---

[4] *See also Yanes v. Comm'r, Soc. Sec. Admin.*, No. 20-14233, 2021 WL 2982084, at *5 n.9 (11th Cir. July 15, 2021) ("In 2017, the SSA amended its regulations and removed the 'controlling weight' requirement for all applications filed after March 27, 2017."); *Planas*, 842 F. App'x at 498 ("[T]he ALJ referred to Dr. Erick Hernandez . . . as a 'treating source,' and acknowledged the requirement to assign weight to the medical opinions presented. These provisions have been omitted from the revised regulation."); *Planas*, 842 F. App'x at 497 n.1; *Purdy v. Berryhill*, 887 F.3d 7, 13 n.8 (1st Cir. 2018) ("The agency has eliminated the treating-physician rule for purposes of claims filed on or after March 27, 2017."); *McFadden v. Berryhill*, 721 F. App'x 501, 505 n.1 (7th Cir. 2018) ("The treating physician rule was eliminated by the Social Security Administration for claims filed after March 27, 2017.").

[5] Such earlier precedents that were abrogated as a result of the new regulation include the cases Plaintiff relies on – *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094 (11th Cir. 2021); *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245 (11th Cir. 2019); *Castro v. Acting Comm'r of Soc. Sec.*, 783 F. App'x 948 (11th Cir. 2019).  While the abrogation of certain holdings in these cases does not invalidate all of the observations made in the cases, Plaintiff fails to show why such observations alone dictate reversal here.  For instance, while Plaintiff contends that some benign clinical findings alone should not serve as a basis to completely disregard Dr. Bencomo's opinion, Plaintiff fails to demonstrate that the ALJ cherry-picked limited benign findings and disregarded Dr. Bencomo's opinion solely based upon such limited findings.  Rather, the ALJ's thorough written decision reveals that the ALJ thoroughly considered the record as a whole, that the ALJ properly applied the correct regulation, and that the ALJ's decision, including her decision to find Dr. Bencomo's opinion unpersuasive, is based on substantial evidence.

Ultimately, the ALJ addressed both the supportability and consistency of Dr. Bencomo's opinions and found his opinions to be unpersuasive. She followed the applicable regulation and provided a detailed rationale to support her determinations regarding supportability, consistency, and persuasiveness. Because Plaintiff has failed to show that the ALJ's supportability and consistency determinations are not supported by substantial evidence, and because this Court cannot substitute its judgment for the ALJ's judgment or reweigh the evidence, the ALJ's evaluation of Dr. Bencomo's opinions must stand.

### 2.   Alleged Step Three Error

Plaintiff has failed to demonstrate that the ALJ erred at step three of the sequential evaluation. At step three, "the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the severity of a specified impairment in the Listing of Impairments." *Flemming v. Comm'r of the Soc. Sec. Admin.*, 635 F. App'x 673, 676 (11th Cir. 2015) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)). "The Listing of Impairments . . . describes for each of the major body systems impairments that [are] consider[ed] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). Listings for mental disorders are contained in Section 12.00. *Bellew v. Acting Comm'r of Soc. Sec.*, 605 F. App'x 917, 923 (11th Cir. 2015). Three Listings included therein are 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders). These three Listings "have three paragraphs, designated A, B, and C; [a claimant's] mental disorder must satisfy the requirements of both paragraphs A and B, or the requirements of both paragraphs A and C." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A)(2).

Listings 12.04, 12.06, and 12.15 (among others) contain the identical paragraph B and paragraph C criteria (only their paragraph A criteria differs). *See id.* §§ 12.00(A)(2), 12.04, 12.06, 12.15. "To satisfy the paragraph B criteria, [a] mental disorder must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." *Id.* § 12.00(A)(2)(b). The four areas of mental functioning (the paragraph B criteria) are: "[1] Understand, remember, or apply information; [2] interact with others; [3] concentrate, persist, or maintain pace; and [4] adapt or manage oneself." *Id.* "To satisfy the paragraph C criteria, [a] mental disorder must be 'serious and persistent'; that is, there must be a medically documented history of the existence of the disorder over a period of at least 2 years, and evidence that satisfies the criteria in both C1 and C2." *Id.* § 12.00(A)(2)(c). "The criterion in C1 is satisfied when the evidence shows that [a claimant relies], on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of [the claimant's] mental disorder." *Id.* § 12.00(G)(2)(b). "The criterion in C2 is satisfied when the evidence shows that, despite [a claimant's] diminished symptoms and signs, [the claimant] ha[s] achieved only marginal adjustment." *Id.* § 12.00(G)(2)(c). "'Marginal adjustment' means that [a claimant's] adaptation to the requirements of daily life is fragile; that is, [the claimant] ha[s] minimal capacity to adapt to changes in [the claimant's] environment or to demands that are not already part of [the claimant's] daily life." *Id.*

It is a claimant's burden to prove that her impairment meets or equals a listed impairment. *Bellew*, 605 F. App'x at 920 (citing *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991)). "To meet a Listing, the claimant must meet all of the specified medical criteria, and an impairment that fails to do so does not qualify no matter how severely it meets some of the criteria." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (citing *Sullivan v. Zebley*, 493 U.S.

521, 530 (1990)); *see also Bellew*, 605 F. App'x at 920 ("An impairment—no matter how severe—that meets only some of the Listing requirements does not qualify.").  An impairment "cannot meet the criteria of a listing based only on a diagnosis. To meet the requirements of a listing, [a claimant] must have a medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R. § 404.1525(d); *see also Bellew*, 605 F. App'x at 922; *Himes*, 585 F. App'x at 762.

In her motion, Plaintiff argues that the ALJ erred by failing to discuss the paragraph C criteria at step three.  Plaintiff appears to imply – though she does not expressly argue – that her impairments met Listings 12.04, 12.06, and/or 12.15.[6]  In doing so, Plaintiff recognizes that the ALJ found that the paragraph B criteria were not satisfied and that the ALJ made "relatively detailed 'paragraph B' findings."  [DE 15] at 6.  Plaintiff does not contend that those paragraph B findings are not supported by substantial evidence (and they clearly are).  Therefore, Plaintiff can only satisfy the foregoing Listings by establishing that both the paragraph A criteria (which are different for each Listing) and the paragraph C criteria (which are the same for the three Listings) are met.  However, Plaintiff wholly fails to discuss the paragraph A criteria.  Regardless, even assuming that the paragraph A criteria are met for at least one of the three Listings, Plaintiff has failed to establish satisfaction of the paragraph C criteria, and she has not demonstrated that the ALJ erred in not discussing the paragraph C criteria.

As discussed above, at step two, the ALJ found that Plaintiff did not have any severe mental impairments.  *See* Tr. 18-21.  The ALJ specifically found that Plaintiff's "medically determinable mental impairments of anxiety, depression, posttraumatic stress disorder (PTSD), and cluster B

---

[6] Plaintiff does not appear to imply (or argue) that her impairments equaled any of these Listings. *See* [DE 15] at 4-7; *see also* 20 C.F.R. § 404.1526 (discussing medical equivalence).  Notably, Defendant asserted in its motion that Plaintiff did not raise a medical equivalency argument, *see* [DE 21] at 6 n.4, and Plaintiff has not filed a reply contending otherwise (and the time to file a reply has long passed).

traits considered singly and in combination, do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and are therefore nonsevere." Tr. 19. Then, at step three, the ALJ found that Plaintiff's "impairments, singly or in combination, do not meet or medically equal any of the listings in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 21. The ALJ noted that "[p]articular consideration was given to" Listings 1.15, 1.18, and 11.02, but the ALJ did not expressly mention any mental Listings in Section 12.00, including Listings 12.04, 12.06, or 12.15. *See* Tr. 21-24. Thus, she did not discuss the paragraph C criteria applicable to those Listings.

While Plaintiff correctly notes that the ALJ did not discuss the paragraph C criteria, Plaintiff does not explain why the ALJ was required to expressly discuss the paragraph C criteria (or to expressly identify the three mental Listings discussed above), particularly where the ALJ found that Plaintiff did not have any severe mental impairments (and instead expressly found them to be nonsevere).[7] Also, Plaintiff does not cite a single case in the section of her motion that alleges a step three error. *See* [DE 15] at 4-7.

At any rate, simply because an ALJ does not expressly discuss certain specific listings "at step three does not necessarily show that the ALJ did not consider those listings." *Flemming*, 635 F. App'x at 676. "While the ALJ is required to consider the Listing of Impairments in making a decision at step three," she is not required "to 'mechanically recite' the evidence or listings she has considered." *Id.* (citing *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986)). "There

---

[7] *Cf. Wells v. Colvin*, 727 F.3d 1061, 1068 n.5 (10th Cir. 2013) ("[T]he regulations do not expressly require the ALJ to determine whether a non-severe mental impairment 'meets or is equivalent in severity to a listed mental disorder.'" (citations omitted)); *see also* 20 C.F.R. § 404.1520a(d)(2) ("*If your mental impairment(s) is severe*, we will then determine if it meets or is equivalent in severity to a listed mental disorder."); *Robinson v. Comm'r of Soc. Sec.*, No. 13-CV-11637, 2014 WL 3528434, at *13 (E.D. Mich. July 16, 2014).

may be an implied finding that a claimant does not meet a listing." *Id.* (quoting *Hutchison*, 787 F.2d at 1463). "Therefore, in the absence of an explicit determination, [courts] may infer from the record that the ALJ implicitly considered and found that a claimant's disability did not meet a listing." *Id.*

Here, the ALJ's decision demonstrates that the ALJ clearly rejected the notion that Plaintiff had a mental disorder that was "serious and persistent" such that it satisfied the paragraph C criteria. Not only did the ALJ find Plaintiff's mental impairments to be nonsevere at step two, but the ALJ elaborated on her evaluation of Plaintiff's mental impairments (as required) at the outset of step four in determining Plaintiff's RFC.[8] *See* Tr. 33-37. For instance, in discussing the prior administrative medical findings, the ALJ noted, *inter alia*, that they were "persuasive of nonsevere mental impairments. They are generally supported by notations of improvement with treatment with only few abnormalities at consultative examination." Tr. 33. The ALJ then discussed record evidence supporting this finding, reiterating that "there was good and sustained improvement since early in the relevant period that is consistent with only nonsevere mental impairments that did not cause more than minimal limitation to ability to perform basic work activities for at least 12 months." Tr. 33-34. Similarly, in discussing record evidence in conjunction with her review of a consultative examiner's opinion, the ALJ found that "the wider record was consistent with only nonsevere mental impairments that were consistent with no functional limitations due to mental impairments." Tr. 34. The ALJ then continued to discuss Plaintiff's mental impairments and related opinion evidence in detail.

---

[8] *Cf. Hutchison*, 787 F.2d at 1463 ("We thus consider it clear that the ALJ, in reaching the fourth and fifth steps of the disability analysis, implicitly found that appellant did not meet any of the Appendix 1 impairments.").

Ultimately, the ALJ's discussion supporting her RFC determination shows that she considered all of Plaintiff's impairments (mental and physical, severe and nonsevere). And the ALJ found that Plaintiff's mental impairments did not limit Plaintiff's RFC. Thus, the ALJ found (at the very least implicitly) that Plaintiff could not have satisfied the paragraph C criteria. After all, if mental impairments are nonsevere and do not cause any functional limitations in one's RFC, it would seem impossible that such impairments could satisfy the paragraph C criteria.

Moreover, against that backdrop, Plaintiff fails to demonstrate that she could have satisfied the paragraph C criteria. Plaintiff merely implies that she satisfied the paragraph C criteria because Dr. Bencomo opined that Plaintiff "suffered from '[r]epeated episodes of deterioration or decompensation in work or work-like setting which cause the patient to withdraw from the situation or experience exacerbation of signs and symptoms (which may include deterioration of adaptive functioning),' a limitation which appears to satisfy the 'paragraph C' criteria." [DE 15] at 6-7 (quoting Tr. 2143, 2147). However, as discussed in the preceding section, the ALJ did not err in finding Dr. Bencomo's opinion to be unpersuasive. Thus, Dr. Bencomo's opinion does not undermine the ALJ's determination, a determination Plaintiff fails to show is not supported by substantial evidence. Furthermore, Plaintiff fails to explain how the foregoing limitation assessed by Dr. Bencomo is sufficient on its own to satisfy the paragraph C criteria in its entirety. Again, Plaintiff's Motion merely states that the limitation regarding episodes of deterioration or decompensation "appears to satisfy the 'paragraph C' Criteria." [DE 15] at 7.

For the foregoing reasons, Plaintiff has failed to establish that the ALJ erred at step three.

## <u>CONCLUSION</u>

For the reasons discussed above, I respectfully **RECOMMEND** that the District Court **DENY** Plaintiff's Motion [DE 15], **GRANT** Defendant's Motion [DE 21], and **AFFIRM** the final decision of the Commissioner.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable James I. Cohn, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 6th day of October 2022.

**Jared M. Strauss**
**United States Magistrate Judge**